GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

*Minutes of Superior Court, letter F. p. 278.*

EDWARD WHITE, Esq. Escheator of Chatham County

*vs.*

RICHARD WAYNE, Sen. Esq.

### IN EQUITY.

THE bill in this case states, that the Rev. *Edward Elling-ton*, late of the city of Savannah, was in his life time, and at the time of his death, possessed of $10,000; that he died in 1796, intestate, leaving no heirs lineal or collateral entitled to his estate; that in consequence of his thus dying intestate and without heirs, his estates became vested in the state, by virtue of the escheat act of 1801, Laws of the state of Georgia, and a right accrued to the escheator to sue for the same in behalf of the state; that on the death of the said *Edward Ellington, Richard Wayne,* sen. obtained letters of administration on his estate, and by virtue thereof got possession of the goods and chattels and personal estate of the said *Ellington,* of the value aforesaid, or other great value; that the said *Richard Wayne,* sen. having thus possessed himself of the personal estate of the said *Edward Ellington,* refuses to account with the escheator for the same, and thereby defrauds the state. The bill then prays for a discovery of the estate the said *Edward Ellington* died possessed of, and what part has come into his hands since *Ellington's* decease, &c. and for an account with the escheator in behalf of the state, touching the said estate.

To this bill the defendant, *Richard Wayne,* filed a special demurrer, and for cause assigned, that he became possessed of the personal estate of *Edward Ellington,* by lawful administration regularly obtained in 1796, which was *previous* to the escheat act, and of that possession obtained as aforesaid, he cannot now be divested by the retrospective operation of the escheat act.

*Charlton*, Attorney General,

Upon these pleadings, it is to be considered,

1. Whether the escheat law of 1801 can operate retro-spectively, so as to bring this case within its operation, and,

2. What is the effect and nature of an administration upon principles of the common law of England and the statutory law of Georgia ?

1. As a decision upon this case will involve principles of great magnitude to the interests of the state, and will in all probability establish a precedent, which will have the effect of governing and controlling all cases of a similar nature, which may hereafter occur ; it is therefore proper that it receive from me as deliberate and as comprehensive an in-vestigation as it is in my power to afford it.

Under this head, I shall examine the operation of the es-cheat system, as it obtains under the municipal code of Eng-land, and as it is altered, modified, and adopted by the sta-tute law of Georgia.

*Escheat* is a creature of the feudal system, and resulted as a necessary consequence of the civil and military policy of that system. The personal and warlike merits and achieve-ments of the feudatory procured him a donation of land from the chief, which was limited to him and his lineal descend-ants, on a failure of which the land resulted back to the lord, or chief, and was said to escheat ; so it escheated if the blood of the tenant was stained by the commission of treason and felony. 2 Blk. Com. 72.

As it is not necessary however to trace the history of es-cheat to an age so distant, I will come at once to the law of escheat, as it is at present recognised in the British autho-rities.

The law of escheats is founded, says Mr. Justice Black-stone, upon this simple principle, that the blood of the last person seized in fee simple, is by some means or other utter-ly extinct and gone ; and since none can inherit his estate, but such as are of his blood and consanguinity, it follows as a regular consequence, that when such blood is extinct, the

GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

2 Blk. Com. 72.

GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

inheritance itself must fail. Tuck. Blk. vol. 2. 245, 246. Co. Lit. 13 a.

Escheats are frequently divided into those *propter defectum sanguinis*, and those *propter delictum tenentis ;* the one sort if the tenant dies without heirs, the other if his blood be attainted. Or, as the doctrine of escheats is very fully expressed in *Fleta, dominus capitalis feodi loco hæredis habetur, quoties per defectum, vel delictum extinguitur sanguis tenentis.*

When the tenant dies without any relations on the part of his ancestors ; when he dies without any relations on the part of those ancestors, from whom his estate descended ; when he dies without any relations of the whole blood ; in all these cases the land shall escheat.

A monster, resembling the brute creation, cannot be heir to land, albeit it be brought forth in marriage. Bastards are incapable of being heirs ; consequently if there be no other claimant, than such monsters or bastards, the land shall escheat.

If a man leaves no other relations than aliens, his land shall escheat to the lord. Com. Dig. tit. Escheat, vol. 3, p. 606, 607. Reeve *vs.* Attorney General, 2 Atkins, 223. 2 Tuck. Blk. 248.

Thus it appears, that by the laws of England, the principle of escheat will apply, when first, the blood of the person last seized is extinct from the want of heirs agreeably to the rules and canons of descent ; second, if his blood is attainted, and third, if the claimant is a monster, bastard, or an alien.

The constitution of the United States, art. 3, inhibits a forfeiture, or corruption of blood by conviction, or attainder ; escheats *propter delictum tenentis* are consequently abolished in this state, and every other state of the federal republic.

This is one grand principle of difference between the English and the American systems of escheat.

Further differences between the British escheat law, and the escheat law of Georgia, are now also to be considered.

The escheat law of the 5th December, 1801, Acts of 1801, p. 64, 65, section 2, enacts, "that where it shall appear,

that any person has died without will and without heirs, leav-
ing property behind, that then and in that case, it shall be
the duty of the escheator of the county, in which such per-
son shall have died, to make inquiry of all the estate both
*real and personal*, of which the deceased died seized and pos-
sessed : that a true statement shall be notified to the judge
of the Superior Court, two months previous to the sitting of
the court, who shall cause a jury to be sworn to make true
inquest of all such supposed escheated property : that heirs
shall have 12 months after such inquest and verdict therein,
to appear and make their claim; and if no heir exhibits his
claim within that time, the property *real and personal* of the
deceased is escheated, is directed to be sold, and after neces-
sary deductions the proceeds of such sale are to be paid into
the treasury of the state : that if any person shall establish
his claim, within 21 years of escheated real property, and
within 5 years to escheated personal property, on an issue
made up and tried, and certified by the judge to the govern-
ment, he shall receive a draft on the treasury, for the amount
paid therein, and by section 3, that the pretensions of any
person claiming as an heir shall be heard without delay, and
the property real and personal to be committed to him, to
hold until the right shall be determined, or found for the
state, or the claimant, the claimant giving security to prose-
cute without delay, and to render to the state the yearly va-
lue of such property, if the right be found for the state."

This mode of proceeding upon escheat, is variant from that
of England ; but the principles of the systems are still more
variant.

Escheat in England fixes itself on *real* estate, *here* it em-
braces in its operation real and personal property. But
ever since the colonization of this state, real and personal
property have been placed upon the same footing, as to al-
most every purpose.

Our ancestors brought over with them, all the laws of the
mother country, which were applicable to our relations,

13

GEORGIA,
Chatham Co.
Jan. 1807.

White
vs.
Wayne.

GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

among them was the common law principle of escheat, a principle coeval with the existence of Georgia.

Without any particular recognition of escheat, by statute, or edict, it is a law incidental to government, and tacitly introduces itself into the social systems and compacts of all civilized nations.

Upon principles of natural law, first occupancy gives a title to all derelict property. The institution of government, and the establishment of political rights, have superseded the doctrine of first occupancy, as subversive of the order and ends of society ; and to prevent the feuds and contentions which would arise up between individuals for the first possession, all derelict property is given to the moral persons, or the sovereignty, for the use, benefit, and purposes of the public. Hence the principle of *escheat*.

A man dying without will, and without heirs, throws his property back into the common mass ; it then becoming common pr perty, and it is to be enjoyed by the community. Vattel, 105. 248, 249.

This is the law of nations, the law of England, and the law of America.

It cannot be denied, that the law of escheat was applicable to Georgia, when a colony, and that it was a component part of that system brought over by our ancestors. Marb. and Crawf. Dig. 400. If it was law *then*, it is law *now ;* and if *londs* could only be escheated in England, land and personal property being placed upon the same footing in Georgia, personal property could have been escheated in Georgia, *previous to the escheat act of* 1801, which is *therefore not introductory of a new law*, but is cumulative of, and declaratory of the common law principle which before obtained.

Statutes are either declaratory of the common law, or remedial of some defects therein. Declaratory, where the custom of the kingdom is almost fallen into disuse, or become disputable, in which case the parliament has thought proper in *perpetuum rei testim onium*, and for avoiding all doubts and difficulties, to declare what the common law is, and

GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

ever has been. Thus the statute of 23 Ed. 3. chap. 2, doth not make any new species of treason ; but only for the benefit of the subject, declares and enumerates, these several kinds of offence, which *before* were treason at common law. Tuck. Blk. vol. 1. part 1. p. 85. 2 H. P. Cr. 189.

If an offence were felony at common law, but a special act of parliament, ousts the offender of some benefit, (that the common law allowed him,) when certain circumstances are in fact, though the body of the indictment must express these circumstances, according as they are prescribed in the statute, yet the indictment must not conclude, *contrary to the form of the statute.* 2 Hale, P. C. 190, 191. Crown Cir. Comp. 108. 1 Hawkins, 151.

Legislating upon the subject of escheat does not therefore presuppose the previous non-existence of the principle, it has only the effect of declaring what the " common law is, and ever has been," in England for the benefit of the *subject,* in this republic, for the benefit of a more exalted personage, *a citizen.* The act of 1801 is declaratory of the common law.

Thus I have generally described the law of *escheats,* upon the doctrine of the English system, and as they are innovated upon, and modified by the statute of 1801.

It would appear from this investigation, 1st, that escheat, in the first instance, was a result of feudal policy ; 2d, that in the progress of civilization, and the refinements of civil government, it became an incidental law ; and that consequently it was a law coeval with the existence of society and government in this state ; 3d, that though *escheat* is solely applicable to *real* estate in England, it is applicable to both real and personal estate in Georgia, because real and personal estate have always been placed upon the same footing, from the first settlement of the state to the present moment ; 4th, that consequently the act of 1801 is not *introductory of a new law, but declaratory* of the common law, which had almost fallen into disuse.

GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

But to return to the question, *Has the act of* 1801 *a retrospective operation?*

This question is at once answered, if the act of 1801 is considered as declaratory of the common law, for the act will then have of course a retrospective operation.

If the demurrer, in using the term "*retrospective*" means an ex post facto law, the question may be satisfactorily answered in that shape ; for the terms "ex post facto," when applied to a law, have a technical import, and in legal phraseology, refer to *crimes*, pains, and penalties.

It is declared by the constitution of the United States, "That no state shall pass any bill of attainder, *ex post facto law*, or law impairing the obligation of contracts."

"Where is the necessity, (says the case in *Dallas*,) or use of the latter words, if a law impairing the obligation of contracts, be comprehended within the terms of *ex post facto law*."

"I believe," says Judge Chase, "that but one instance (2 L. Raym. 1352,) can be found, in which a British judge called a statute, that affected *contracts* made before the statute, an *ex post facto law ;* but the judges of England always considered penal statutes, that created crimes, or increased the punishment of them, as ex post facto laws.

"If the term ex post facto law, is to be construed, to include, and to prohibit the enacting any law *after a fact*, it will greatly restrict the power of the state and federal legislatures ; and the consequences of such a construction may not be foreseen."

Here there is a distinction settled between a law of the legislature cumulative of, and declaratory of the common law which necessarily operates retrospectively, and a law affixing a punishment to an action antecedently committed and considered as innocent.

"*Every ex post facto law*, must necessarily be retrospective, but every *retrospective law*, is not an ex post facto law."

The celebrated *Yazoo* act of 1795, and the rescinding act of 1796, affords a convincing illustration of this distinction.

I would contend, that the act of 1796 had a retrospective operation ; for as the act of 1795 was bottomed upon *fraud*, bribery, and corruption, there was no *contract*, the fraud vitiated every thing, *Fermer's* case, 3 Co. 77, and as no contract can be perfected through the instrumentality of fraud, the rescinding act of 1796 could not, and did not *impair the obligation of a contract.*    It could not be considered an *ex post facto law*, because it had no reference to *crimes*, pains, and penalties. It is, therefore, to be considered a *retrospective law*, or it is a chimerical non-descript.

"Ex post facto laws, and laws impairing the obligations of contracts, are not only within the prohibition of the constitution, but if such prohibition was not contained in the federal compact, the principles of the revolution itself prepared a vortex for all those parts, and principles of the common law of England, which refuse to be blended, with our republican institution.

"A retrospective act in the acceptation given it by the authorities, may, like all other salutary measures, be perverted by bad men, to bad purposes ; but all retrospective acts are not necessarily iniquitous.    Statutes of oblivion, and of pardon, the taking possession of private property for important, and indispensable public purposes, &c., must all operate retrospectively ; and yet it will not be contended, that such statutes are either unjust or illegal."

All statutes declaratory of the common law, are necessarily retrospective statutes.    The principle of *escheat*, being coeval with the existence of government in this state, the act of 1801 is consequently declaratory of that principle with some modifications, and has consequently a retrospective effect.

But the question I set out with, is determined by the express words of the act of 1801.    By the 4th section of that act it is enacted, "That any possession, grant, conveyance, or any other cause or title, shall not preclude, or hinder the state from making inquest, or sale, after the manner herein before described, of all such property both real and person-

GEORGIA,
Chatham Co.
Jan. 1807.

White
vs.
Wayne.

GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

al, as has been *heretofore* escheated (save that which may have been escheated prior to the 4th of July, 1776,) by the death of the person last seized or possessed, without will and without heirs, any law or usage to the contrary notwithstanding ; and farther, wherever any property real or personal of any person, dying without will and without heirs, shall be found in the hands of an *administrator* or executor, the escheator shall on behalf of the state, sue for, and recover the same in law, or in equity ; and of real estate, the same when recovered shall be sold by notice and advertisement, as herein before directed ; and if personal property, the amount of the same when recovered shall be paid into the public treasury of this state.

Now this act is neither ex post facto, or does it impair the obligation of contract ; it is consequently not within the prohibition of the constitution. It is therefore a retrospective act, which has the public benefit in view, and operates legally on antecedent facts, whether considered as an act declaratory of the common law, or as a new law made for the benefit and advantage of the community.

Surely the act of 1801 was made to fit this very case.

The law, and cases referred to in this decision of the argument, may be found in 1 Blk. Com. 46. 3 Dallas, 396. Const. of the U. S. Act 1, Sect. 10. 3 Dallas, 397. 399. 393. 391. Acts of the state of Georgia, 68, 69.

If escheat cannot fix itself upon this property, the state is without a remedy. For if the estate in the hands of the defendant, is the estate of a person dying without will and without heirs, there is no other mode of vesting it in the state, but through the medium of escheat.

It cannot be vested, if it can be vested at all, by *forfeiture* or *confiscation.*

Escheat is not a right arising *jure belli*, it results from a mere municipal regulation. It exists not because the person purchasing is an enemy, but because he dies without *will* and without *heirs,* and because he is an alien, &c.

It is not a right extended over the subjects of a particular

power, with which by chance we may be at war, but over the subjects of foreign nations at all times whatsoever, and to all other persons, whether citizens or aliens dying without will or without heirs.

GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

The right by which the common law is technically denominated a forfeiture ; forfeiture of lands and goods for offences (founded on the offence of the alien in presuming to purchase, or, on attainder in high treason) says Blackstone, and called by the civilians *bona confiscata*, because they belonged to the Fiscus, or imperial treasury, or as our common lawyers call them, *bona foris acta*.

Indeed lord *Coke* seems in one place to consider forfeiture and confiscation as synonimous terms ; and Blackstone, also in a few passages, appears to have used the term confiscation, to signify a forfeiture into the treasury ; but preserving the distinction which this learned commentator has taken between the two terms, as above stated, the one being a *civil law*, the other being a *common law* term, and expressly discovering, that we had treated of the right now in question, in a chapter, under the head of "title by forfeiture," it is not fair to conclude that the technical and appropriate term descriptive of this offence is *forfeiture* and not *confiscation*.

Besides this ordinary right of forfeiture, there is an extraordinary one, according to belligerent nations, by right of war, of confiscating the property of their enemies. This right does not wait on the contingent event of a purchase by descent to an alien, or on the event of a person dying without will and without heirs ; it affects the property there actually holden by the enemy, nor is it carried into effect by the ordinary course of the municipal laws ; the property is *seized* and *confiscated* by an extraordinary act of the government of the belligerent nation. It is seized not because it belongs to an alien, or to a person dying without will and without heirs, but because it belongs to an enemy.

To *this right* it is, that the term confiscation is technically and properly applied. Here then are two senses in which

GEORGIA,
Chatham Co.
JAN. 1807.

W~~e
vs.
Wayne.

the term confiscation may be employed. The *one* restricted to a mere seizure by a belligerent nation, in right of war, the *other* an extensive sense, covering not only the right which has just been mentioned, but also comprehending a mode of acquiring property by the state, under a permanent municipal regulation. Thus is *confiscation* and *forfeiture* contradistinguished from the title by *escheat*, one is a right springing out of a state of war, the other is the consequences of the commission of offences. *Escheat*, as has been before particularly defined, has no view to a state of war, or the commission of offences.

(The Attorney General here acknowledged his obligation for this division of his argument to the report of a decision in the High Court of Appeals in Virginia, *Robert Reed, Colin Reed, Hugh Ballantine*, and *Frances*, his wife, *vs. Margaret Reed.* It was reported in the newspapers of the day, and it is not known whether it has found a place in any of the Virginia volumes of reports. In support of its doctrines are cited 4 Blk. 382. 1 Blk. 372. 2 Blk. 274. 3 Inst. 227. 2 Blk. 408. 2 Blk. 267.)

The right now in question is strictly a right accruing by *escheat.*

Upon what pretexts can Mr. *Wayne* be permitted to retain the estates of *Edward Ellington?* He says, in his demurrer, he ought not to make the discovery prayed for, because the act of 1801 is retrospective. I hope I have given to that point its full consideration, and I do not see how that principle can avail the defendant upon any doctrine of the common law of England, the statute law of Georgia, or the constitution of the United States.

The defendant assumes another ground in his demurrer; he alleges a regular obtainment of letters of administration on the estate and effects of *Edward Ellington.*

The capacity of an administrator carries with it no magic. It is not the talisman which dissolves by the touch legal and vested rights of individuals or the public. If the court should determine that the act of 1801 has a retrospective operation,

GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

it appears to me, that the subordinate point of administration will be reduced to a shadow. *Accessarius sequitur principale.*

2. This brings me to a consideration of my second point. *What is the effect and nature of an administration in England, and in Georgia?*

It was formerly held as sound law in England, that is, before the statute of 13 Ed. 1. c. 19, that the ordinary had the absolute disposal of intestate effects, to be distributed to pious uses. 2 Bac. Ab 398. 2 Blk. 494. Law of Executors, 183.

Administrators are now put upon the same footing with regard to suits and to accounting as executors appointed by will. 2 Blk. Com. 496.

An administrator is but a *trustee*, Eq. Ab., and as as a trustee is he not bound to account to his *cestuy que trust?*

Who is the *cestuy que trust* in the present case? The heirs of *Ellington?* He left no heirs. The devisees of *Ellington?* He died intestate. The administrator is, therefore, the trustee of the state, or he is trustee of no person, moral or physical.

Surely the administrator does not claim the ancient powers of the ordinary! Does he consider the property of *Ellington* as placed at his disposal, to be distributed to pious uses?

The property of Ellington is derelict, and if the state of Georgia cannot possess herself of it, then all the iniquity resulting from the principle of first occupancy is revived among us, and force and chance usurp the jurisdiction and authority of settled government, and certain laws.

The reporter regrets that he cannot here insert at length the arguments of the learned counsel, *Noel* and *Berrien*, in support of the demurrer. He has not been furnished with briefs which would enable him to do justice to those arguments, and is therefore compelled to state, from some loose notes before him, the general grounds upon which their arguments rested.

14

GEORGIA,
Chatham Co.
JAN. 1807.

White
vs.
Wayne.

The learned counsel contended, that the escheat system did not obtain in Georgia antecedent to the act of 1801, and therefore that act could not operate *prospectively;* and that it was an *ex post facto,* as it applied to this case.

Mr. *Wayne* had obtained a vested right, by virtue of his administration, which could not be defeated by the ex post facto, or retrospective operation of the statute ; and it was said by Mr. *Noel,* that, in this state, the powers of *escheat* and *forfeiture* for failure of inheritable blood remained dormant, until the passing of the act of 1801, which could not operate retrospectively, so as to subvert rights vested previously.

The counsel cited a decision of *Tait,* judge of the western circuit, in which the act of 1801 had been declared *ex post facto,* as it related to supposed escheated cases *antecedent* to the act. This case was in point.

Per *Jones,* Judge.

The first question proposed, is, whether the law for regulating escheats be an *ex post facto* law within the meaning of the constitution of the United States, and the constitution of this state ?

The words *ex post facto,* when applied to a law, have a technical meaning, and, in legal phraseology, apply to crimes, pains, and penalties. Blackstone's description of the terms is clear and accurate. " There is," says he, " a still more unreasonable method than this, which is called making of laws *ex post facto ;* when, after an action, indifferent in itself, is committed, the legislature then, for the first time, declared it to have been a crime, and inflicts a punishment upon the person who has committed it. Here it is impossible that the party could foresee that an action, innocent when it was done, should be afterwards converted to guilt, by a subsequent law ; he had, therefore, no cause to abstain from it, and all punishment for not abstaining, must, of consequence, be cruel and unjust." 1 Blk. Com. 46.

In the constitutions of Massachusetts, Delaware, Maryland,

and North Carolina, the terms *ex post facto* are understood in the same sense.

GEORGIA,
Chatham Co.
Jan. 1807.

White
vs.
Wayne.

The 24th article of the declaration of rights, in the constitution of Massachusetts:—" Laws made to *punish* for actions done before the existence of such laws, and which have not been declared crimes by preceding laws, are unjust, oppressive, and inconsistent with the fundamental principles of a free government."

The constitution of Delaware, article 11, of the declaration of rights:—" That retrospective laws punishing *offences* committed before the existence of such laws, are oppressive and unjust, and ought not to be made."

The constitution of Maryland, article 15, of the declaration of rights:—" That retrospective laws, *punishing* facts committed before the existence of such laws, and by them only declared *criminal*, are oppressive, unjust, and incompatible with liberty; wherefore, no *ex post facto law* ought to be passed."

The constitution of North Carolina, article 24, of the declaration of rights:—" That retrospective laws, punishing facts committed before the existence of such laws, and by them only declared *criminal*, are oppressive, unjust, and incompatible with liberty; wherefore no *ex post facto* laws ought to be passed." Again, the words of the constitution of the United States are, " That no state shall pass any bill of attainder, *ex post facto law*, or law impairing the obligation of contracts. Art. 1, sec. 10." Where is the use and necessity of the latter words if a law, impairing the obligation of contracts, be comprehended within the terms *ex post facto* law?

The framers of the constitution, says Judge *Patterson*, understood and used the words *ex post facto*, in their known and appropriate signification, as referring to crimes, pains, and penalties. The arrangement of the distinct members of this section, necessarily points to this meaning.

The words of the constitution of this state are, " Freedom of the press, and trial by jury, as heretofore used in this

GEORGIA, state, shall remain inviolate, and no *ex post facto* law shall be
Chatham Co.
JAN. 1807. passed."

White
vs.
Wayne.

From the connexion of the latter words with the preceding parts of this section, it appears that they were intended to refer only to *crimes, pains,* and *penalties.* The law regulating escheats, does not refer to crimes, pains, and penalties, and is therefore not within the meaning of the prohibition.

The defendant's counsel urged, that the act is creative of a new right by way of forfeiture, and therefore cannot retrospect in its operations, so far as to interfere with rights vested. But the defendant's application to the property for letters of administration, proves, that he did not consider himself entitled to the possession, much less to the property in dispute by *mere occupancy.* His taking out letters, therefore, tends to show, that he collected the property as a trustee, for those lawfully entitled ; and that he was not otherwise interested, than in such commission as the law gives him ; otherwise he would have rested on his title of occupancy, without applying to the legal department for an authority to take possession.

All property is derived from society, being one of those civil rights which are conferred upon individuals, in exchange for that degree of natural freedom which every man must sacrifice when he enters into social communities. Hence, the right of society to regulate that property.

It is a well settled principle, that an administrator is merely an officer of the ordinary, from whom his title to possession is entirely derived, and his duty is prescribed by act of the legislature, in whom the deceased has reposed no trust at all. He is, therefore, if no relations be found, the trustee of the state.

The demurrer is therefore overruled ; and it is ordered, that the defendant do make full answer to the bill of complaint, 30 days before the meeting of the next Superior Court.

*Charlton, A. G.* for Complainants.
*Davis, Berrien,* and *Noel,* for Defendant.